UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERLIN JASMANY ORTIZ-REYES,
#958755,

    Petitioner,                                                     Civil Action No. 18-CV-11987

vs.                                                             HON. BERNARD A. FRIEDMAN

CONNIE HORTON,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

            This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Erlin Jasmany Ortiz-Reyes ("petitioner") asserts that he is being held in violation of his constitutional rights.  Petitioner was convicted of first-degree criminal sexual conduct (person under 13) following a bench trial in Wayne County Circuit Court and was sentenced to 25 to 40 years imprisonment in 2015.  He raises claims concerning the effectiveness of trial counsel.  For the reasons stated below, the Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability and denies petitioner leave to proceed in forma pauperis on appeal.

**I. Facts and Procedural History**

            Petitioner's conviction arises from his sexual conduct with an underage girl in 2013. The Michigan Court of Appeals described the relevant facts as follows:

> Complainant testified that when she was 11 years old she met defendant, who was approximately 20 years old. Complainant believed that defendant was her aunt's boyfriend's roommate. Complainant testified that she and defendant were intimate at his house on at least one occasion. She and defendant would talk frequently on the phone. Eventually, complainant's mother became

> suspicious about their relationship and filed a police report. Complainant also submitted to a Kids–TALK interview.
>
> Following this initial contact with police, complainant's mother sent her to Puerto Rico to live with her grandparents. At that time, complainant continued to have contact with defendant. She returned home after several months and testified that she and defendant began seeing each other again. They had sex in his car. Her family became suspicious once again, contacted police. Complainant was re-interviewed, at which time she identified defendant. Complainant's statements to police, her Kids–TALK interview and her testimony revealed inconsistencies regarding the type of sex she and defendant had—penis and vaginal or oral—and how many times they had sex, ranging anywhere from one to three times.
>
> In contrast, defendant denied even meeting complainant. He knew her mother, with whom he had a relationship, but otherwise denied sexual contact, or any type of contact, with complainant. He was arrested at work and at that time gave police the wrong name and was wearing a shirt with the name "Jorge," which matched a paycheck found at the apartment complainant believed defendant shared with her aunt's boyfriend.
>
> The trial court noted defendant's testimony in which he denied ever knowing or seeing complainant and denied living with the aunt's boyfriend, but deemed defendant's testimony not credible. The trial court acquitted defendant of some counts but ultimately concluded that at least one incident of penile-vaginal intercourse occurred. Defendant was sentenced to 25 to 40 years' imprisonment...

*People v. Ortiz-Reyes*, No. 327258, 2016 WL 5118324, at *1 (Mich. Ct. App. Sept. 20, 2016).

Following his conviction and sentencing, petitioner filed an appeal of right with the Michigan Court of Appeals asserting that trial counsel was ineffective in questioning the victim and her mother. The Michigan Court of Appeals denied relief on those claims and affirmed his conviction and sentence. *Id.* at *2-3. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Ortiz-Reyes*, 891 N.W.2d 497 (Mich. 2017).

Petitioner thereafter filed his federal habeas petition raising the same claims of ineffective assistance of trial counsel presented to the state courts on direct appeal of his conviction. Respondent has filed an answer to the petition, contending that it should be denied for lack of merit.

## II. Legal Standards

The following standard applies in federal habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'"

*Wiggins*, 539 U.S. at 520-21 (citations omitted). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). The Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Further, a state court's factual determinations are presumed to be correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**III. Discussion**

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective in cross-examining the victim and calling her mother to testify, both of whom provided damaging testimony against him during the course of questioning. Respondent contends that these claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 687.

The Supreme Court has confirmed that a federal court's consideration of ineffective

assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington,* 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Citing the *Strickland* standard, the Michigan Court of Appeals denied petitioner the relief sought. The court explained:

> Defendant claims that counsel was ineffective while cross-examining the complainant. The following exchanges took place regarding the frequency with which complainant and defendant had sex:
>
> > Q. [by the prosecutor] And how many times did you and the Defendant have sex after you got back from Puerto Rico?
> >
> > A. I don't remember.
> >
> > Q. Was it more than once?
> >
> > A. (No response.)
> >
> > Q. You don't remember?
> >
> > A. (Nodding.)
> >
> > Q. No, okay.
> >
> > * * *
> >
> > Q. [by defense counsel] And before you went to Puerto Rico, you had sex one time, is that right?
> >
> > A. Yes.

6

Q. And then when you came back from Puerto Rico, you had sex three times, is that right?

A. It was like two times.

\* \* \*

Q. [by defense counsel] When you were talking to the male police officer who is not Sergeant Ortiz, do you remember telling the male police officer that you had sexual intercourse with my client in the back seat of the car at least six times?

A. No.

\* \* \*

Q. [by defense counsel] Do you remember being asked these questions and giving this answer, Miss \_\_\_\_\_—Question: About how many times did you say you had sex with him? And did you give this answer—I don't know?

A. Yes.

Q. Okay—and this is Miss Tink asking you the question, do you remember that?

A. Yes.

Q. And the question—Was it more than five times, and was your answer yes?

A. I don't remember.

Q. Okay. Were you asked this question by Miss Tink—It was more than five times, was it more than ten times? And was your answer—I really don't remember.

A. I don't.

Q. So, you had no recollection other than the first time, and then at some point you said that it was three times, is that right?

7

> A. No.
>
> Defense counsel had a sound strategy in cross-examining the complainant because the cross-examination revealed various inconsistencies in the complainant's testimony on a variety of matters: where she and defendant would "hang out" and with whom, how often she would visit defendant's house, whether she knew where the defendant lived, the frequency with which she and defendant had sex, and the type of sex she and defendant had. By illustrating complainant's inconsistencies, defense counsel was able to discount complainant's credibility. The strategy was sound in light of the fact that this was a case of "he said/she said," which made witness credibility, or lack thereof, paramount.
>
> For the same reason, defense counsel's decision to call complainant's mother as a witness was sound strategy as it highlighted the mother's past romantic relationship with defendant and thus a motive for her to lie. In the absence of concrete evidence of a relationship or any association between complainant and defendant, it was critical that counsel cross-examine complainant and call the mother as a witness to underscore not only the weaknesses in their testimonies but also a potential for dishonesty; this was defense counsel's best strategy as it would diminish their credibility and increase the chance for acquittal.
>
> Because defendant cannot show that defense counsel's tactics fell below the objective standard of reasonableness, it follows that he was not prejudiced by counsel's performance.

*Ortiz-Reyes*, 2016 WL 5118324, at *2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. While the failure to cross-examine a prosecution witness can constitute ineffective assistance of counsel, "courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Millender v. Adams*, 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002). Impeachment strategy is a matter of trial tactics and such decisions are not ineffective "simply because in retrospect better tactics may have been available." *Id.* at 872; *see also Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D.

8

Mich. 2002).

In this case, trial counsel cross-examined the victim in a manner to highlight the variations in her accounts of her interactions with petitioner and to emphasize inconsistencies between her police statements, her Kids–TALK interview, her preliminary examination testimony, and her trial testimony. Such a strategy challenged the victim's credibility and was reasonable given that the case centered on whether the judge, acting as the finder of fact, would believe the victim's or petitioner's version of events. Similarly, counsel's decision to call the victim's mother to testify at trial was reasonable because her testimony confirmed her past relationship with petitioner, thereby providing a possible motive for fabrication, and because her testimony raised credibility issues as to the victim's version of events. Trial counsel thus exercised sound trial strategy in questioning the victim and her mother at trial – even if those witnesses also provided some testimony that could be seen as damaging to the defense. To be sure, the fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was constitutionally ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard. More importantly, for purposes of federal habeas review, he has failed to show that the Michigan Court of Appeals' ruling to that effect is unreasonable. Habeas relief is not warranted.

## IV. Conclusion

Accordingly,

IT IS SO ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue because petitioner has not made a substantial showing of the denial of any of his constitutional rights.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis because any appeal in this matter would be frivolous.

                                                        s/Bernard A. Friedman  
                                                       Bernard A. Friedman  
Dated: October 22, 2020          Senior United States District Judge  
       Detroit, Michigan

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 22, 2020.

Erlin Jasmany Ortiz-Reyes, #958755        s/Johnetta M. Curry-Williams  
Chippewa Correctional Facility               Case Manager  
4269 W. M-80  
Kincheloe, MI 49784